IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| Faith D. G, <br><br> Plaintiff, <br> v. <br><br> Nancy A. Berryhill, Acting Commissioner of Social Security <br><br> Defendant. | Memorandum Decision and Order Affirming the Decision the Commissioner to Deny Benefits <br><br> Case No. 1:17-cv-114 BCW <br><br> Magistrate Judge Brooke Wells |

This matter is before the undersigned in accordance with 28 U.S.C. § 636(c). Plaintiff, Faith G, appeals the Commissioner's denial of her application for Social Security Income (SSI) disability benefits.[1] The court determines the decision of the Commissioner is supported by substantial evidence and the law was properly applied. Therefore, finding no reversible error, the court affirms the Commissioner's decision.

I

Ms. G,[2] alleges she was disabled as of March 6, 2014,[3] due to "gastroparesis, chronic abdominal pain, nausea, periodic vomiting, undernourishment, dehydration, weight loss, intestinal dysmotility, chronic constipation, chronic fatigue and migraines."[4] To establish disability, Ms. G must show that she has an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …."[5]

---

[1] *See* 42 U.S.C. §§ 1281 *et seq*.
[2] Based on privacy concerns regarding sensitive personal information the court does not use Plaintiff's last name. Privacy concerns are a part of many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037.
[3] Plaintiff amended her onset date at the hearing held before the Administrative Law Judge.
[4] Opening brief p. 1, ECF No. 14; *see also* Tr. 131
[5] 42 U.S.C. § 423(d).

Following an initial denial of benefits, Ms. G requested and received a hearing before an administrative law judge (ALJ).  Prior to her hearing, Ms. G alleged the additional impairments of Ehlers-Danlos Syndrome,[6] Arnold Chiari Formation[7] and a Mood Disorder.  Ms. G was born June 10, 1995, graduated from high school and was enrolled at Weber State University at the time of her hearing before the ALJ.

After holding two hearings and allowing the submission of additional evidence, the ALJ followed the required five-step sequential evaluation process[8] and found Ms. G had the severe impairments of gastro paresis and chronic abdominal pain.[9]  Next, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform sedentary work with certain requirements.  The ALJ considered medical evidence in the record, including evidence regarding Ehlers-Danlos Syndrome,[10] Arnold Chiari Formation[11] and Plaintiff's alleged mood disorder.[12]  The ALJ also reviewed the medical opinions of Dr. Trevor Squire, Dr. Sarah Dugan, Dr. Stephen Scharmann,[13] state agency medical consultants Dr. Helen Kjolby, Dr. Alice Lingen, Dr. June Steinvorth and Dr. Garett Chesley,[14] and the opinion of Dr. Mark Farber, the impartial medical expert that appeared at the first hearing.[15]  Ms. G has no past relevant work.  At Step Five, the ALJ found

---

[6] Ehlers-Danlos syndrome is "is a group of inherited disorders that affect your connective tissues — primarily your skin, joints and blood vessel walls."  Common symptoms of the most common form of this disorder include overly flexible joints and stretchy, fragile skin.  https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125 (last accessed Sept. 14, 2018).
[7] Arnold Chiari Formation or Chiari malformation is a condition where brain tissue extends into the spinal canal due to an abnormally small or misshapen skull.  *See* https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last accessed Sept 14, 2018).
[8] 20 CFR 404.1520(a).
[9] Tr. 22.
[10] Tr. 24.
[11] Tr. 24, 28.
[12] Tr. 22
[13] Tr. 28-30.
[14] Tr. 30.
[15] Tr. 24-25, 28.

Ms. G could perform limited unskilled sedentary work such as an Addressor, Call-out operator and Telephone clerk.[16]  Thus, she was not disabled.

After the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner.  Ms. G seeks review of this decision arguing the ALJ erred in four ways:  (1) The ALJ erred in failing to identify all of Plaintiff's severe impairments and did not consider them in determining her RFC; (2) The ALJ failed to order genetic testing or a consultative examination by a Rheumatologist for the Ehlers-Danlos syndrome; (3) The ALJ erred in giving Dr. Stephen Scharmann's medical opinion little weight; and (4) The ALJ erred in assessing Plaintiff's RFC.  The court will address each of the alleged errors in turn.

The court reviews the Commissioner's "decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record."[17]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."[18]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[19]  Thus, the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"[20]

---

[16] Tr. 32.
[17] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir.2006).
[18] *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir.2008) (internal quotation marks omitted).
[19] *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).
[20] *Id.* (quoting *Custer County Action Ass'n v. Garvery*, 256 F.3d 1024, 1030 (10th Cir. 2001)).

II

Ms. G first asserts the ALJ erred in failing to identify all her severe impairments and did not consider them in fashioning her RFC.  Specifically, Plaintiff takes issue with the ALJ failing to find that her Ehlers-Danlos Syndrome, Arnold Chiari Formation and dysautonomia were not severe, medically determinable impairments.[21]  This step-two argument fails.

An impairment is severe if it "significantly limits [ a claimant's] physical or mental ability to do basic work activities …."[22]  The burden is on a claimant to make a *de minimis* showing of impairment at step two.[23]  Thus, a claimant need only establish and an ALJ need only find, at least one severe impairment at step two to proceed to the next step.[24]  Therefore, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."[25]  Here, the ALJ found Ms. G had two severe impairments – gastro paresis and chronic abdominal pain.[26]

In addition, the record does not support Plaintiff's assertion that the ALJ failed to incorporate the effects of the additional impairments into the hypotheticals presented to the vocational expert.  The ALJ specifically discussed these impairments throughout the decision noting the lack of evidence supporting their diagnosis.[27]  And, even without an objective evidentiary basis for these impairments, the ALJ noted "that the claimant is found to have a

---

[21] Pla.'s brief p. 5-9.
[22] 20 C.F.R. § 404.1520(c).
[23] *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004); *see also Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287, 2300 (1987) (O'Conner, J., concurring) (noting the low standard at Step 2 where only "those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking" a vocational analysis utilizing the other steps).
[24] *See Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (rejecting the claimant's arguments regarding the severity of her impairments because the ALJ found she "suffered from severe impairments" which is "all the ALJ was required to do"); *see also Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (noting that an ALJ need only find at least one severe impairment).
[25] *Allman*, 813 F.3d at 1330.
[26] Tr. 22.
[27] Tr. 24.

residual functional capacity for less than sedentary work …."[28] "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[29] Here, the ALJ's RFC determination is supported by a proper narrative statement, as well as substantial evidence.

### III

Ms. G's argument that the ALJ erred by failing to order genetic testing or a consultative examination by a Rheumatologist to assess the Ehler-Danlos Syndrome also fails. Social Security Ruling 16-4p, which explains the use of genetic testing in evaluating disability claims, provides that the Social Security Agency will consider genetic testing, but it will not order genetic testing.[30]

The "starting place" for a claimant to establish a need for a consultative examination at the Agencies' expense, "must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation."[31] In the instant dispute, the mere fact that two doctors, Rhett Smith and Stephen Scharmann, wrote a letter stating that Ms. G had a history of Ehlers-Danlos syndrome with joint problems, without objective evidence supporting their opinions, did not trigger a need for a consultative examination. Ms. G is essentially trying to shift her responsibility for obtaining objective evidence onto the Government.

---

[28] *Id.*
[29] Soc. Sec. Ruling, SSR 96–8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).
[30] Soc. Sec. Ruling, SSR 16-4p 2016 WL 1575064, *5 (S.S.A. Apr. 13, 2016). This ruling became effective before the ALJ's decision in September 2, 2016. *See also* 20 C.F.R. § 416.919a.
[31] *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

5

IV

Ms. G argues the ALJ erred in rejecting Dr. Scharmann's opinion. The record does not support her argument. The ALJ reviewed Dr. Scharmann's opinion, including the treating source statement he submitted on March 15, 2016, and despite being a "treating medical source," the ALJ did not assign Dr. Scharmann controlling weight. Rather, the ALJ gave him "little weight" pointing to inconsistencies with Dr. Scharmann's limitations for sitting, standing and walking with other physical exams in the record. Specifically, the ALJ cited to Exhibits 15F, 17F, 22F, and Ms. G's own testimony that she participates in public plays performing on stage at a park and sits for several hours on the computer writing stories on a consistent basis.

Exhibit 15F contains treatment notes from a series of visits Ms. G made to the Utah Digestive Health Institute from June 16, 2014 to January 22, 2016.[32] Plaintiff argues these records are not persuasive because they come from a digestive institute and not a sports medicine specialist such as Dr. Scharmann. A closer review of these records, however, undermines Plaintiff's position because they contain information regarding the symptoms commonly associated with Ehlers-Danlos Syndrome. For example, on July 7, 2014, Plaintiff's musculoskeletal exam was normal and there were no reported problems with her joints or skin.[33] The normal test results repeated on numerous occasions during this time frame despite Plaintiff's subjective complaints to the contrary.[34] In fact, Ms. G reported walking everyday and did not mention any problems with doing so during a May 2015 visit.[35] These records constitute evidence that support the ALJ's decision to discount Dr. Scharmann's opinion.

---

[32] Tr. 761-84.
[33] Tr. 765.
[34] Tr. 768, 776, 779, 782.
[35] Tr. 775.

In similar fashion, the other exhibits cited to by the ALJ—17F, treatment notes by Dr. Scharmann reporting that the "patient may resume normal activities"[36] and 22F, notes from a neurology consultation with Dr. Squire—also provide support for the ALJ's decision to discount Dr. Scharmann's opinion. Additionally, Ms. G's own testimony regarding her daily activities provide added support for the ALJ's decision.[37] An ALJ must "'give good reasons in [the] notice of determination or decision' for the weight he ultimately assigns [an] opinion."[38] Here, the ALJ provided good reasons for the weight he assigned to Dr. Scharmann. Plaintiff's disagreement with the assigned weight is not a sufficient basis to warrant a remand and the court will not reweigh the evidence.[39]

V

Finally, Ms. G takes issue with the ALJ's assessment of her RFC. As noted above, a "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[40] The ALJ thoroughly discussed Plaintiff's symptoms, Plaintiff's medical records, the opinion of the impartial medical expert Dr. Farber and Plaintiff's daily activities. Thus, this argument also fails.

---

[36] Tr. 787.
[37] *See e.g., Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (noting the claimant's reported activities of daily living appropriately undermined a treating physician's "extreme limitations")/
[38] *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)).
[39] *See Aualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.").
[40] Soc. Sec. Ruling, SSR 96–8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

## VI

The court concludes the correct legal standards were applied and the ALJ's factual findings are supported by substantial evidence in the record. The Commissioner's decision to deny benefits is affirmed. The Clerk of the Court is instructed to close this case.

DATED this 18 September 2018.

_____
Brooke C. Wells
United States Magistrate Judge